

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00295-CV

_____


IN THE INTEREST OF A.S, A CHILD

---

On Appeal from the 231st District Court
Tarrant County, Texas
Trial Court No. 231-605409-16

---

Before Kerr, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Appellant Father C.S. appeals from the trial court's final order appointing the Department of Family and Protective Services as managing conservator of Appellant's child, A.S. In two issues, Appellant complains of the trial court's failure to make a record of the final hearing and the court's initial failure to appoint him an appellate attorney. We affirm.

### Background Facts

In 2017, A.S.'s maternal grandmother was appointed managing conservator of A.S. and his younger brother. C.S. and A.S.'s mother were named as possessory conservators.

In March 2019, the Department filed its "Original Petition for Protection of a Child and for Joint Managing Conservatorship and for Termination in Suit Affecting the Parent-Child Relationship" concerning A.S. The Department alleged that there was an immediate danger to A.S.'s physical health or safety and requested that the trial court immediately appoint it as the child's temporary sole managing conservator without notice of an adversary hearing and to appoint it and A.S.'s grandmother as joint managing conservators after notice and hearing. With respect to C.S., the Department requested that the trial court terminate his parental rights if his reunification with the child could not be achieved.

The Department attached to the petition an affidavit from a Department employee. The affidavit stated that over the past year, A.S., who was seven years old

2

at the time, had become "very aggressive" and had threatened to kill his brother with a knife and had taken a knife from the kitchen of his home and hidden it under his pillow. At the time of the affidavit, A.S. was a patient at Cook Children's Medical Center's inpatient psychiatry unit. According to the affidavit of that unit's medical director, A.S. has been diagnosed with disruptive mood dysregulation disorder, obsessive-compulsive disorder, and trauma and stressor-related disorder, among other conditions, and he had a history of suspected abuse. A.S.'s grandmother had medical conditions that prevented her from keeping A.S. safe. She had tried to get him admitted to a residential treatment center, but the only facility in Texas that accepted her insurance would not accept children under eight years old. The medical director thus recommended that the Department obtain joint managing conservatorship so that A.S. could be placed at a residential treatment center.

A.S.'s grandmother also signed an affidavit stating that A.S. was violent to other students and staff at school, that "[i]t has gotten so bad in the home where you have to stay up all night to watch him to see if he gets up," and that it was no longer safe in the house for her or A.S.'s brother. She asserted that she was "in no way making the assertion that [she] no longer want[ed] him" and was "just asking for some help for [her] grandson in hopes of him leading a normal life."

Based on the petition and attached evidence, the trial court signed an emergency ex parte order naming the Department temporary managing conservator, appointing an attorney and guardian ad litem for A.S., and setting a hearing date for

3

further proceedings. After an adversary hearing, the trial court rendered temporary orders and appointed the Department and A.S.'s grandmother as joint managing conservators. On June 19, 2019, the trial court appointed trial counsel for Appellant.[1] Soon after that appointment, Appellant became incarcerated.

In May 2020, the Department filed its permanency report and family-plan evaluation, stating that A.S. had been placed with a residential treatment facility and that although he had "threatened to kill peers and staff at his current placement" and had "episodes of hitting walls, kicking chairs, [and] screaming after becoming dysregulated," all his mental and behavioral needs were being met. On June 4, 2020,[2] the trial court held a permanency hearing and set a July 2, 2020 trial date.

Because he was incarcerated, Appellant did not personally attend the July 2 trial, but his appointed counsel appeared on his behalf. On July 21, 2020, he filed a

---

[1]In an April 2020 letter mailed to the trial court, Appellant requested "intervention of the court to ensure [A.S. and Appellant] receive effective [assistance] of counsel" and stated that he had had no contact from his appointed attorney. He asked for a hearing to address his concerns "and/or contact [his] appointed counsel" and that his mother be appointed managing conservator rather than A.S.'s maternal grandmother. The record does not reveal any action taken on this letter. But Appellant's trial counsel's comments at the hearing on Appellant's motion for new trial imply that his attorney had been in communication with him about his wishes.

[2]The trial court had signed an earlier order retaining the case on its docket and setting a new dismissal date in accordance with the Texas Supreme Court's May 26, 2020 Seventeenth Emergency Order. *See Seventeenth Emergency Order Regarding COVID-19 State of Disaster*, 609 S.W.3d 119, 120 (Tex. 2020).

4

premature pro se notice of appeal with respect to the trial court's ruling.[3] On July 31, 2020, the trial court signed a final order appointing the Department permanent managing conservator of A.S.[4] The order did not alter the parent–child relationship between Appellant and A.S.; Appellant's parental rights were not terminated, and he remained possessory conservator. A.S.'s grandmother was also appointed as possessory managing conservator. The order further recited that "[t]he record of testimony was waived by consent of the parties" and that Appellant's appointed attorney "shall be DISMISSED under a finding of good cause."

After the appellate record was filed, we realized that the trial court's order did not identify the good cause for discharging C.S.'s attorney. We consequently abated the proceeding for the trial court to either appoint an attorney for C.S.'s appeal or state good cause on the record for not doing so. The trial court appointed Appellant's current counsel.[5]

---

[3]Appellant's prematurely filed notice of appeal was not initially forwarded to this court. Appellant later filed a second notice of appeal, which, according to its file stamp, was received by the trial court clerk on September 15, 2020. The trial court clerk then forwarded both notices of appeal to this court.

[4]The trial court's order recites that the final hearing was held on July 31, 2020, but the trial had been set for July 2, 2020, and the court reporter informed this court that the trial was in fact held on July 2.

[5]Our disposition of Appellant's issues should not be read to excuse the procedural issues regarding the late forwarding of the notice of appeal and the trial attorney's release without good cause. Our holdings turn on the particular facts and arguments in this case.

Appellant's new attorney filed a motion for new trial. At the hearing on the motion, Appellant's attorney conceded that the trial court no longer had plenary power to grant a new trial, but he asked the trial court to "make a finding clarifying what the good cause [was] for relieving [the appointed trial attorney] on July 31st and [to] have the parties represent what their understanding was at that time."

Appellant's trial court counsel then provided his recollection of the circumstances at trial, stating,

> I believe I was done at the time everyone signed on the order as to form. [Appellant] had asked that CPS consider his mother in Florida for placement. Once that was done and wasn't—and a decision was made that the kids wouldn't go out, he expressed him being—I guess being done with this—with the process and able to move forward.

The Department's attorney and the ad litem attorney agreed with this representation. Appellant's appellate attorney then asked the trial court to make a finding about why no appellate attorney had been appointed, explaining, "I don't think the State can explain why he was not appointed appellate counsel when he had [in the time between the trial date and the trial court's final order] filed his pro se notice of appeal. I don't think that can be explained." The trial court then summarized its findings:

> The Court will find that there was good cause to not appoint a counselor as to one, all the parties had signed as to form leading the Court to believe that everybody was in agreement with the—the order presented to the Court.[6] But I guess I need to address, first of all, as to why it was

---

[6]The attorneys for the parties signed to approve the order as to form, but no party signed to approve the order's substance. *See Estate of Nielsen*, No. 02-17-00251-

6

not on the record. All the parties agreed to waive the record, including [C.S.'s appointed trial attorney], and so the Court was believing and under the impression that all parties were in agreement as to not making a record and then again as to form, everybody signed, leading the Court to believe that everybody was in agreement with the—with the order. And since everybody was in agreement as to the order and then [C.S.'s attorney] asked to be relieved since everybody was in agreement that day to the order, then [C.S.'s attorney] was relieved of his duties and not believing that there was a reason for the father to file an appeal because [C.S.'s attorney] was representing Father on that day and representing his interests since the father was incarcerated that day, the Court felt that— and maybe that was a mistake on the Court's part—believing that there was not gonna be an appeal, but certainly note for future reference we will definitely put everything on the record.

After the hearing, Appellant's appointed appellate attorney filed a brief on behalf of Appellant.

## Failure to Record Trial Proceedings

Because Appellant's first issue relies in part on his second issue, we start with the second issue. Appellant argues that the failure to record the proceedings at the final trial constituted automatic reversible error and requires us to remand for a new trial.[7] Appellant asserts that in a final trial on the merits, the making of a reporter's record cannot be waived. The only authority he cites is Texas Rule of Appellate

---

CV, 2018 WL 4625531, at *4 (Tex. App.—Fort Worth Sept. 27, 2018, pet. denied) (mem. op.) (noting that signing an order "approved as to form" does not render it an agreed order).

[7]Appellant expressly disclaims any ineffective assistance argument, arguing instead that the parties mistakenly waived the record.

Procedure 34.6, which entitles an appellant to a new trial when a reporter's record is lost or destroyed through no fault of the appellant. *See* Tex. R. App. P. 34.6(f).

But the Family Code provides that the parties may, with the court's consent, waive the making of a record. Tex. Fam. Code Ann. § 105.003(c); *see Campbell v. Campbell*, No. 02-12-00313-CV, 2014 WL 1999318, at *1 (Tex. App.—Fort Worth May 15, 2014, no pet.) (mem. op.). Although Appellant did not attend the trial due to his being incarcerated, his attorney did. The trial court's order stated that the parties consented to waiving the reporter's record, and there is no indication in the clerk's record—or from the reporter's record of the new-trial hearing—that Appellant's attorney objected to the failure to make a record or requested that a record be taken and the trial court denied any such request. *See Campbell*, 2014 WL 1999318, at *1.

We recognize that Appellant's effort to find grounds for reversal, if any exist, is hampered by the lack of a reporter's record. *See, e.g., B.F. v. A.F.*, No. 02-16-00133-CV, 2017 WL 2375767, at *1 (Tex. App.—Fort Worth June 1, 2017, no pet.) (mem. op.). But because the Family Code specifically authorizes parties to agree to waiving a record, the failure to record the proceedings is not itself a basis for reversal. *See* Tex. Fam. Code Ann. § 105.003(c); *Campbell*, 2014 WL 1999318, at *1. We are thus constrained to overrule Appellant's second issue.

**Failure to Appoint an Appellate Attorney**

In Appellant's first issue, he argues that the trial court erred by failing to appoint him an attorney after releasing his trial attorney in the final order, thus

8

depriving Appellant of the basic constitutional right to counsel. Appellant argues that the trial court's decision left him "without counsel during the time frame in which he could have perfected his appeal, but more importantly left him without representation until the first week of November of 2020." He asserts that "[i]n tandem with the fact that his attorney had waived a reporter's record, . . . Appellant was for appellate purposes essentially abandoned."

The Family Code provides that when a government entity files suit to terminate a parent-child relationship or to request the entity's appointment as the child's conservator, an indigent parent is entitled to appointment of counsel. Tex. Fam. Code Ann. § 107.013; *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). An appointed attorney must continue to serve until the earliest of

(A) the date the suit affecting the parent-child relationship is dismissed;

(B) the date all appeals in relation to any final order terminating parental rights are exhausted or waived; or

(C) the date the attorney is relieved of the attorney's duties or replaced by another attorney after a finding of good cause is rendered by the court on the record.

Tex. Fam. Code Ann. § 107.016(3). A finding of good cause must be articulated in the record. *Id.*; *cf. B.B. v. Tex Dep't of Family & Protective Servs.*, No. 03-15-00082-CV, 2015 WL 2183581, at *2, *5 (Tex. App.—Austin May 5, 2015, no pet.) (mem. op.) (describing trial-court order explaining reasons for finding of good cause and for allowing B.B. to proceed pro se at trial). "[C]ounsel's belief that the client has no grounds to seek further review from the court of appeals' decision" is not good cause,

and neither is "[m]ere dissatisfaction of counsel or client with each other." *In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016).

The trial court's order did not articulate good cause for discharging Appellant's trial attorney. We agree with Appellant that without good cause noted on the record, the trial court could not discharge Appellant's trial attorney without appointing him new counsel for appeal. We further agree that Appellant's filing of a notice of appeal before the trial court signed its final order indicated that, contrary to the belief of the trial court and the trial attorneys, Appellant did not agree with the trial court's rulings.

But we disagree with Appellant's conclusion that the trial court's discharging the trial attorney requires reversal. Appellant timely filed his notice of appeal pro se, thereby perfecting his appeal. On abatement, the trial court appointed an appellate attorney, who filed Appellant's brief and continues to represent him on appeal. *See In re M.E.-M.N.*, 342 S.W.3d 254, 260 (Tex. App.—Fort Worth 2011, pet. denied) (recognizing that the appellant was initially denied appointed appellate counsel but holding that the appellant had not established prejudice from the trial court's failure to timely appoint counsel because the appellant "has had the opportunity, with the assistance of appointed appellate counsel, to fully present and brief any issues she wished to pursue on appeal"); *cf. In re R.H.*, No. 01-14-00874-CV, 2015 WL 4594557, at *10 (Tex. App.—Houston [1st Dist.] July 28, 2015, no pet.) (mem. op.) (stating that any error in sustaining post-trial contest to the appellant's indigency affidavit was moot because the appellant had counsel to file a new trial motion and represent her at

the hearing, subsequent counsel filed an appellate brief on her behalf and continued to represent her in the appeal, and the complete appellate record had been filed). Appellant does not explain what steps he did not take while he was pro se that he could or would have taken if he had had an attorney. *Cf. M.S.*, 115 S.W.3d at 546 (considering appellant's complaint that trial counsel was ineffective for failing to have all trial proceedings recorded and stating that the appellant "must at least indicate what errors would have been recorded if a record had been made. This she does not do."). And although Appellant asserts that without a reporter's record he has no way to determine the basis of the trial court's rulings, the waiving of the record was authorized by statute, and the waiver occurred before—and therefore was not caused by—the discharging of the trial attorney.

We overrule Appellant's first issue.[8]

## Conclusion

Having overruled Appellant's two issues, we affirm the trial court's order.

---

[8]Again, we acknowledge that the lack of a reporter's record stymies Appellant's effort to find grounds for reversal, *see, e.g., B.F.*, 2017 WL 2375767, at *1, but the Family Code authorized the parties to waive the record. *See* Tex. Fam. Code Ann. § 105.003(c); *Campbell*, 2014 WL 1999318, at *1.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: April 1, 2021